IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 16, 2005 Session

## SUSAN DIANE JONES v. STEVEN TRAVIS DORROUGH, ET AL.

**Appeal from the Circuit Court for Knox County**
**No. 2-214-03    Wheeler A. Rosenbalm, Judge**

---

**No. E2003-02749-COA-R3-CV -  FILED APRIL 26, 2005**

---

This case arises out of a long-running dispute between Steven Travis Dorrough and his former wife, Susan Diane Jones over possession of the parties' former residence which was awarded to Ms. Jones in the divorce, but was subsequently leased to Mr. Dorrough. Ms. Jones first filed suit against Mr. Dorrough and his new wife for possession of the residence and for unpaid rents, penalties, interest and attorney's fees. The Dorroughs counterclaimed asserting that Ms. Jones had agreed to sell them the property and that they had paid her in full and were entitled to specific performance. The trial court granted a summary judgment in favor of Ms. Jones, awarded her possession of the property, judgment for unpaid rents and attorney's fees, and dismissed the counterclaim.  The Dorroughs appealed and we affirmed the trial court's decision as to the dismissal of the Dorroughs' counterclaim and remanded for further findings as to the funds allegedly paid by Mr. Dorrough.  The Dorroughs then filed suit against Ms. Jones and this suit was consolidated with the remanded suit. In the second suit, the Dorroughs alleged breach of contract, fraudulent misrepresentation, and outrageous conduct.  The trial court granted Ms. Jones' motion for summary judgment on the contract and tort claims.  The trial court held an evidentiary hearing on the remanded issue as to whether Mr. Dorrough was entitled to a set-off based on alleged payments by him to Ms. Jones of $192,000.  The trial court denied the set-off and awarded judgment to Ms. Jones for rents, late fees, prejudgment interest and attorney's fees. The  Dorroughs appealed this adverse decision. After a careful review of the record, we hold that 1) the trial court's grant of summary judgment to Ms. Jones was proper as to the breach of contract claim because the Dorroughs' contract claim was a compulsory counterclaim that they were required to have presented in the original case,  2) the trial court's grant of summary judgment was proper as to the claims for outrageous conduct and fraudulent misrepresentation since the claims were time barred by the applicable statutes of limitation, 3) the evidence does not preponderate against the trial court's finding of fact regarding the rents due, payments made by Mr. Dorrough, and the award of attorney's fees.  Accordingly, we affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed;  Cause Remanded**

SHARON G. LEE, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

John O. Threadgill, Knoxville, Tennessee, for the Appellants, Steven Travis Dorrough and Jayme Dorrough

L. Caesar Stair and W. Tyler Chastain, Knoxville, Tennessee, for the Appellee, Susan Diane Jones

**OPINION**

*Procedural History and Background*

On February 24, 1990, the Appellant, Steven Travis Dorrough and the Appellee, Susan Diane Jones, entered into a marital dissolution agreement (hereinafter "MDA") in resolution and settlement of a divorce proceeding then pending between them. This MDA was incorporated in a final judgment of divorce which was entered by the Chancery Court for Knox County on February 27, 1990.

Among other things, the MDA sets forth the parties' agreement as to the disposition of their property and includes the following provision with respect to the marital residence:

> (5) RESIDENCE, 3003 KELLER BEND ROAD: Immediately upon the execution of this Agreement, the Husband shall execute and deliver to the Wife a quit claim deed which conveys all of his right, title and interest in the residential dwelling house located at 3003 Keller Bend Road, Knoxville, Tennessee, 37922. The Wife shall lease the aforesaid premises to the Husband and a separate lease agreement, to be drafted by counsel for the Husband, shall be executed by the parties. Such lease agreement shall provide, inter alia, that the Husband shall pay rent to the Wife in an amount equal to the monthly mortgage rate existing upon such residence. Lease payments made by the Husband shall be paid to the Wife, directly to the holder of the mortgage, or as the parties from time to time agree. The lease payments made to or on behalf of the Wife shall be considered income to her, and she shall be entitled to take all allowable deductions and depreciations permitted by the Internal Revenue Code. At any time up to the fifth anniversary of the lease agreement, the Husband shall have the option to purchase the residence from the Wife for the sum of One Hundred Seventy Five Thousand Dollars ($175,000.00), said amount being the parties' best estimate of the existing equity in the residence at the time of the execution of this agreement. After the fifth anniversary of the lease agreement, the Wife shall be free to sell, encumber or take possession of the residence or to enter into additional agreements with the Husband respecting the residence. If at any time the Husband offers to purchase the residence from the Wife, she shall accept the sum of One Hundred Seventy

-2-

Five Thousand Dollars ($175,000.00), or she may hire an appraiser at her expense, and agreed upon by the parties, to appraise the residence. If the then appraised value reveals an equity greater than One Hundred Seventy Five Thousand Dollars ($175,000.00), the Husband shall be bound to purchase the residence at the higher equity value by paying One Hundred Seventy Five Thousand Dollars ($175,000.00) down, and the remaining balance in equal, monthly installments for sixty (60) months. Interest at the rate of 10% (ten percent) per annum. In no event, however, will the Wife be required to accept less than One Hundred Seventy Five Thousand ($175,000.00) from the Husband for her equity in the residence. If the Wife elects to hire an appraiser as set forth above, and the parties cannot agree upon an appraiser, the Wife shall propose the names of three (3) appraisers and the Husband shall select one (1) of the three (3) to perform the appraisal.

In accordance with this provision of the MDA, Mr. Dorrough quit-claimed the residence to Ms. Jones and the parties entered into a lease agreement under the terms of which Mr. Dorrough commenced paying rent on the property. Ms. Jones avers that this lease, which Mr. Dorrough admits he signed on April 3, 1990, was the only contract she executed regarding the lease of the subject property. Under the terms of this lease Mr. Dorrough agreed to pay rent on the property at the rate of $3,500.00 per month or $42,000.00 annually. The lease states a termination date of March 31, 2000. Ms. Jones further avers that, upon termination of the lease, she demanded that Mr. Dorrough return the property to her; however, he refused to do so.

On April 3, 2000, Ms. Jones brought a wrongful detainer action against Mr. Dorrough and his new wife, Jayme Dorrough, for possession of the residence and unpaid rent, penalties, interest and attorney's fees. Thereafter, by judgment of the General Sessions Court for Knox County entered September 12, 2000, Ms. Jones was restored to possession of the property and was granted damages in the amount of $34,590.00. The Dorroughs appealed this judgment to the Circuit Court for Knox County on September 14, 2000.

On November 30, 2000, Ms. Jones filed a motion for summary judgment in the Circuit Court action alleging, *inter alia*, the following:

7. The only contract at issue is the Lease dated April 1, 1990. The facts are undisputed that the Lease has expired.

8. Further, Plaintiff has received no rent payment from Defendants since December 1999.

9. Plaintiff is entitled to summary judgment granting an order of possession for the Leased Premises as to both Defendants. The facts are undisputed that the Lease terminated as of March 31, 2000. Further, the Defendants have failed to

return the Leased Premises and to this day wrongfully remain in possession of the Leased Premises.

10. Further, Plaintiff is entitled to summary judgment for back rent from the Defendant, Steven T. Dorrough. The facts are undisputed that the Defendant, Steven T. Dorrough, has failed to make any payment to the plaintiff for rent of the Leased premises since December 1999. Thus, under the terms of the Lease, Plaintiff is due rent from the Defendant Steven T. Dorrough, as a hold-over tenant, for the months of January 2000 through the present based on the monthly rent of Three Thousand Five Hundred and 00/100 ($3,500.00) Dollars per month plus late fees and interest. Thus, after all credits are given back to the Defendant Steven T. Dorrough, there is presently due and owing back rent of Thirty Eight Thousand Four Hundred Forty-Six and 00/100 ($38,446.00) Dollars, plus late charges, attorney fees and costs.

An answer and counterclaim was filed by the Dorroughs on December 22, 2000. The answer denies that Ms. Jones is entitled to possession of the property and alleges that she entered into an oral contract with the Dorroughs by which she agreed to sell them the property and that the Dorroughs "have fully performed under the contract." The Dorroughs' counterclaim further alleges the following:

5. The written lease agreement contemplated by the parties' Marital Dissolution Agreement was drafted but was never executed.

6. The Plaintiff/Counter Defendant approached the Defendant/Counter Plaintiff in April 1990 with a copy of the lease that she is now propounding. She explained that she needed a written lease agreement for the property in order to obtain credit. The Defendant/Counter Plaintiff signed the lease in an effort to accommodate her.

7. Pursuant to Paragraph 5 of the Marital Dissolution Agreement, after 5 years, "Wife shall be free to sell, encumber, or take possession of the residence of the residence *or to enter into additional agreements with the Husband respecting the residence.*"[Emphasis in original.]

8. Since 1990, when the Defendant/Counter Plaintiff quit-claimed the property to the Plaintiff/Counter Defendant, he has paid or caused to be paid to the Plaintiff/Counter Defendant, substantial sums of money. The intention of the parties was that the property would eventually be transferred back to the Defendant/Counter Plaintiff.

9. In February 1999, the parties entered into an oral agreement that the Defendant/Counter Plaintiff would pay an additional $100,000.00 to complete the

purchase of the property. The Defendant/Counter Plaintiff paid that sum to the Plaintiff/Counter Defendant.

10.  Shortly after making the final payment on the property, the Defendant/Counter plaintiff paid off the existing mortgage on the property, which had a balance of approximately $92,000.00.

11. Since making the final payment to the Plaintiff/Counter Defendant, the Defendant/Counter Plaintiff has improved the property with the knowledge of the Plaintiff/Counter Defendant.

12. Although the Defendant/Counter Plaintiff has fully performed his obligations under the parties' oral contract, the Plaintiff/Counter Defendant has failed to perform her obligations under the agreement by refusing to convey title.

13. Plaintiff brings this action for specific performance of the parties' contract.

On January 26, 2001, Ms. Jones filed a motion to dismiss the Dorroughs' counter-claim on grounds that the Dorroughs "have failed to state a claim for specific performance of any written contract." The motion further asserts that, to the extent that the Dorroughs rely on an oral contract, their counter claim fails to state a claim for relief in that such is barred under the Statute of Frauds as codified at Tenn. Code Ann. §29-2-101(a)(4).

By order entered March 26, 2001, the trial court granted both Ms. Jones' motion for summary judgment and her motion to dismiss the Dorroughs' counterclaim and awarded her possession of the property at issue and a judgment against Mr. Dorrough in the amount of $55,590.00 representing the original judgment of $34,590.00, plus rent at the rate of $3,500.00 per month for the months of October 2000 through March 2001. By subsequent order of May 1, 2002, the trial court also awarded Ms. Jones attorney's fees in the amount of $16,779.73.

The Dorroughs appealed the trial court's ruling and on October 28, 2002, we filed our opinion in the matter. See *Jones v. Dorrough, et al*, No. E2001-02397-COA-R3-CV, 2002 WL 31414098, 2002 Tenn. App. LEXIS 782 (Tenn. Ct. App. E.S. filed Oct. 28, 2002) *appl. perm. appeal denied March 10, 2003.* As set forth in that opinion, we affirmed the judgment of the trial court as to the dismissal of the Dorroughs' counterclaim seeking specific performance under an alleged oral contract. With respect to the $192,000.00 which Mr. Dorrough alleges that he paid on the property's purchase price, as set forth in paragraphs 9 and 10 of the Dorroughs' above referenced counterclaim, we remanded for a determination as to whether this amount was in fact paid on the purchase price and, if so, whether it should be treated as a set-off against any rent judgment rendered in favor of Ms. Jones or whether Mr. Dorrough should receive a judgment for any amount by which the $192,000.00 might exceed the rent and late charges owed by him. We also vacated the trial court's judgment awarding Ms. Jones attorney's fees and remanded for a re-determination of this award.

Subsequent to our remand, on April 8, 2003, the Dorroughs filed a separate lawsuit against Ms. Jones in the Circuit Court for Knox County. ( For the sake of clarity this case, *Steven Dorrough v. Susan Jones*, Docket No. 2-214-03, will be referred to herein as *Dorrough v. Jones*.) The complaint in this latter cause of action asserts that the MDA entered into by the parties on February 24, 1990, "constitutes a contract for deed and the contract for sale and purchase" of the Keller Bend Road residence. The complaint indicates that on November 4, 1994, Mr. Dorrough delivered written notification of an intent to exercise an option to purchase the property. The complaint otherwise alleges the following:

> 3. Plaintiff has fully and completely performed all of his duties and obligations under the contract for deed delivering to the defendant all consideration called for in the written contract for the purchase of real estate.
>
> 4. Demand has been made upon the defendant to deliver a deed, free and clear of all encumbrances, to the plaintiff pursuant to the terms of the written contract but defendant has failed and refused to do so.
>
> 5. The parties have been involved in related litigation styled *Susan Diane Jones vs. Steven Travis Dorrough and Jayme Dorrough* filed in the Circuit Court for Knox County, Tennessee and being Docket No. 3-585-00. That suit dealt with some related issues but was only addressed to the question of whether or not there was an enforceable oral contract between the parties. No court has addressed the written contract now before the Court.
>
> 6. Plaintiff has paid the defendant sums in excess of Nine Hundred Fifty- Four Thousand Dollars ($954,000.00) for the purchase of the real estate and based upon fraudulent misrepresentations by the defendant that if plaintiff would provide additional assistance to her, she would comply with her obligations.
>
> 7. Defendant's acts as aforesaid including but not limited to fraudulent misrepresentations and failure to deliver a deed to the premises after payment in full amounts to outrageous conduct.
>
> 8. Plaintiff is entitled to enforce the contract for deed and for the purchase of real estate and has demanded specific performance but defendant has refused to comply.

The complaint seeks enforcement of the alleged contract for deed and sues Ms. Jones for damages for breach of contract, fraudulent misrepresentation and outrageous conduct.

On May 16, 2003, Ms. Jones responded to this complaint with a motion to dismiss asserting therein that the allegations in the complaint are compulsory counterclaims that should have been raised in the prior case of *Jones v. Dorrough* which we have discussed above.

On May 23, 2003, the trial court granted Mr. Dorrough's motion to consolidate this more recent case with the original case of *Jones v. Dorrough* which was now before the trial court upon remand. On June 27, 2003, Ms. Jones filed a motion seeking summary judgment dismissal of the consolidated case upon grounds that all claims advanced by Mr. Dorrough for alleged breach of contract, specific performance, fraudulent misrepresentation and outrageous conduct were barred by the applicable statutes of limitations and upon further grounds that, as a result of his delay in pursuing an action based upon an alleged written contract, Mr. Dorrough waived his right to pursue such action and was precluded from proceeding pursuant to the doctrines of laches and judicial estoppel. Mr. Dorrough also filed a motion for partial summary judgment on the issue of whether the parties entered into a written contract. In a supporting memorandum to this latter motion, Mr. Dorrough asserts that there is no dispute that the MDA controls the occupancy and sale of the residence.

By order entered October 15, 2003, the trial court granted Ms. Jones' motion for summary judgment filed in the consolidated case, dismissed Mr. Dorroughs' complaint with prejudice and denied Mr. Dorrough's motion for partial summary judgment.

On October 7, 2003, the trial court heard the remanded matter of the proper treatment to be accorded the $192,000.00 which Mr. Dorrough alleges he paid toward purchase of the property. The trial court delineated the issue on remand as follows:

> [I]n keeping with the remand, the Court is obliged to determine whether Mr. Dorrough is entitled to recover some $92,000.00 that he says he applied to the prepayment or early payment of the mortgage and which he says he paid because Ms. Jones promised orally to convey the house to him if he made that payment, and whether Mr. Dorrough is entitled to recover an additional sum of $100,000 allegedly paid to Ms. Jones as consideration for the alleged promise orally made to convey the property to him.
>
> And so, as the Court understands it, it must determine the amount of back rent, if any, due Ms. Jones; the amount of late fees, if any, due her; the amount of attorney's fees, if any due her; and any prejudgment interest to which she might equitably be entitled under the prejudgment interest statute. And the Court is bound to determine here whether Mr. Dorrough is entitled to credit for the early payment of the mortgage, and $100,000 paid to Ms. Jones.

The trial court found that the controlling lease in the case was the above noted lease signed by the parties on April 3, 1990, under which Mr. Dorrough was bound to pay rent at the rate of $3,500.00 per month or $42,000.00 per year for a term of five years with five year renewals thereafter. The court rejected Mr. Dorrough's assertion that the reason he paid off the $92,000.00 mortgage on the property in 1999 was that Ms. Jones had promised orally to convey the property to him if he did so. However, the court found that, Mr. Dorrough should receive credit for this payment with respect to the monthly rental payments due under the lease:

It appears to the Court that in making a final payment in 1999 that Mr. Dorrough has in effect paid the rent for that year, and pre-paid some $50,000 which should be applied to future rent as if he had not paid the mortgage off. If we apply $42,000 to payment of rent in 1999, we have a balance due on the mortgage, according to the figures furnished by Ms. Jones, of approximately $50,983. In that that sum exceeds the sum of $42,000, it does not appear here that Mr. Dorrough would be obliged to have paid any rent to Ms. Jones in the year 2000. And if we apply $42,000 of that balance to the year 2000, it leaves us with a balance of $8,983, which at the rate of $3,500 a month would cover rent during the year 2001 for a little more than two months - - about two and a half months. (It's clear here that Mr. Dorrough hasn't paid any rent since he paid off the mortgage in 1999.)

Based upon these circumstances, the trial court concluded that Ms. Jones should be awarded back rent from March 15, 2001, through October 7, 2003, at the rate of $3,500.00 per month, plus late charges and pre-judgment interest. The trial court also considered Mr. Dorrough's allegation that he paid Ms. Jones an additional $100,000.00 in consideration of her oral promise to convey the property to him. The trial court found that Mr. Dorrough did not establish this allegation by a preponderance of the evidence and that he was, therefore, not entitled to a setoff for that amount. The court entered an order incorporating its findings and conclusions on November 5, 2003.

On November 7, 2003, the trial court addressed the remanded question of what attorney's fees Ms. Jones should be awarded in the case. The court cited language in the controlling lease agreement which provides that "if the landlord shall rightfully seek to obtain possession of the leased premises and shall be obstructed therein by tenant and suit shall result in which suit landlord is successful, tenant shall pay to the landlord a reasonable attorney's fees and costs incurred by landlord in prosecuting said suit." Based upon this language and the circumstances of the case, the trial court granted Ms. Jones an award of attorney's fees in the amount of $38,702.36. The trial court's order decreeing this award was entered on November 26, 2003.

The Dorroughs appealed the orders of November 5, 2003 and November 26, 2003.

### Issues for Review

The following issues are presented for our review:

1) Whether *Dorrough v. Jones* was appropriately dismissed by summary judgment.

2) Whether, in addressing questions remanded to the trial court by this Court, the trial court erred in excluding evidence of certain "substantial payments" which Mr. Dorrough alleges he made to Ms. Jones in consideration of her oral promise to convey the subject property to him.

-8-

3) Whether the evidence preponderates against the trial court's findings on remand regarding the $192,000.00 which Mr. Dorrough alleges he paid to Ms. Jones in consideration of her oral promise to convey the subject property to him.

4) Whether the evidence preponderates against the trial court's finding on remand as to which written agreement controlled the parties' rights with respect to the lease, purchase and conveyance of the subject property.

### *Standard of Review*

The first of the above stated issues pertains to the trial court's decision with respect to Ms. Jones' motion for summary judgment. The standard by which we review a summary judgment is well settled. Summary judgment proceedings are efficient and effective vehicles for concluding cases that can and should be decided on legal issues alone. However, these proceedings should not serve as a substitute for a trial of genuine and material factual matters. *Byrd v. Hall*, 847 S.W.2d 208, 210-211 (Tenn. 1997); *Bellamy v. Federal Express Corp.*, 749 S.W.2d 31, 33 (Tenn. 1988). Summary judgments should be awarded only when the moving party has demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Tenn. R.Civ.P. 56.04; *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *Carvell v. Bottoms*, 900 S.W. 2d 23, 26 (Tenn. 1995).

No presumption of correctness attaches to the lower court's judgment and our task is confined to reviewing the record to determine whether the requirements of Tenn. R. Civ. P. 56 have been met. We must view the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in favor of the nonmoving party. *Staples v. CBL & Associates, Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000).

### *Analysis*

The first issue we address is whether *Dorrough v. Jones* was appropriately dismissed by summary judgment.

As we have noted, on September 14, 2000, the Dorroughs appealed the judgment of the General Sessions Court in favor of Ms. Jones to the Circuit Court. On November 30, 2000, Ms. Jones filed a motion for summary judgment, paragraph 7 of which asserts that "[t]he only contract at issue is the Lease dated April 1, 1990." The Dorroughs' answer and counterclaim filed thereafter requests that the trial court order the specific performance of an alleged *oral* contract with Ms. Jones pursuant to which, the Dorroughs maintain, she agreed to convey the subject property to Mr. Dorrough upon his fulfillment of certain specified obligations. Thereafter, on January 26, 2001, Ms. Jones filed a motion to dismiss the Dorroughs' counterclaim wherein she states *inter alia* that the Dorroughs "have failed to state a claim for specific performance of any written contract." The

Dorroughs did not assert in their answer and response or otherwise in that case that the parties had entered into a *written* contract for sale and purchase of the property. The Dorroughs did not make this assertion until they filed *Dorrough v. Jones*.

Tenn. R. Civ. P. 13.01 provides as follows:

> **Compulsory Counterclaims -** A pleading shall state as a counterclaim any claim, other than a tort claim, which at the time of serving the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction, except that a claim need not be stated as a counterclaim if at the time the action was commenced the claim was the subject of another pending action. This rule shall not be construed as requiring a counterclaim to be filed in any court whose jurisdiction is limited either as to subject matter or as to monetary amount so as to be unable to entertain such counterclaim.

In his complaint in *Dorrough v. Jones* , Mr. Dorrough sues for "enforcement of a contract for deed, breach of contract, fraudulent misrepresentation and outrageous conduct." We believe it is beyond dispute that the claims for enforcement of a contract for deed and breach of contract based upon an alleged written contract are claims which arise out of the subject matter of Ms. Jones' original claim, that being the right of possession to the subject property. As such, these claims constituted compulsory counterclaims which Mr. Dorrough was required to present in the original case if he intended to pursue them. We are somewhat perplexed as to why Mr. Dorrough failed to assert the existence of a written agreement with Ms. Jones if one existed and supported rights asserted by him in that case. This is particularly puzzling given the fact that in the original case Mr. Dorrough was confronted with both Ms. Jones' assertion in her motion for summary judgment that "the only contract at issue is the Lease dated April 1, 1990" and her further assertion in her motion to dismiss that the Dorroughs "have failed to state a claim for specific performance of any written contract." We are aware that the trial court's grant of summary judgment was not based specifically upon grounds that any of the claims raised in Mr. Dorrough's complaint were compulsory counterclaims which were barred because not raised in the original case; however, we will affirm a trial court's decree if correct in result even though rendered on different grounds. *Hill v. Lamberth*, 73 S.W.3d 131, 135 (Tenn. Ct. App. 2001) and *Hopkins v. Hopkins*, 572 S.W.2d 639, 641 (Tenn. Ct. App. 2001). Accordingly, it is our holding that these claims were properly dismissed by summary judgment.

As to Mr. Dorrough's claims of "outrageous conduct" and "fraudulent misrepresentation", we rule that, to the extent these claims are held to be tort claims and, therefore, not subject to Tenn. R. Civ. P. 13.01, they are nevertheless barred by the applicable statutes of limitation. As a personal tort action, an action for outrageous conduct is governed by the statute of limitations set forth at Tenn. Code Ann. §28-3-104 which provides in pertinent part as follows:

**28-3-104. Personal tort actions. -** (a) The following actions shall be commenced within one (1) year after the cause of action accrued:

(1) Actions for libel, *for injuries to the person*, false imprisonment, malicious prosecution, breach of marriage promise; [Emphasis added.]

To the extent that Mr. Dorrough's claim for fraudulent misrepresentation purports to be a claim for recovery of damages for injury to property, it is governed by the statute of limitations set forth at Tenn. Code Ann. §28-3-105:

**28-3-105. Property tort actions - Statutory liabilities -** The following actions shall be commenced within three (3) years from the accruing of the cause of action:

(1) Actions for injuries to personal or real property;

Whether a personal tort action or a property tort action, the cause of action accrues at the time the injury occurs, when it is discovered, or when in the exercise of reasonable care and diligence the injury should have been discovered. *McCroskey v. Bryant Air Conditioning,* 524 SW2d 487, 491 (Tenn. 1975) and *Willis v. Smith*, 683 S.W.2d 682,688 ( Tenn. Ct. App. 1984). In his brief, Mr. Dorrough states that "[i]n this case no injury occurred until the Appellee refused to deliver a deed and the statute of limitations would not begin running until it became apparent the deed was not forthcoming." The record shows that Ms. Jones issued the wrongful detainer warrant against Mr. Dorrough on April 3, 2000; therefore, it is not subject to reasonable debate that, at the very least, as of that date it would have been apparent to Mr. Dorrough that "the deed was not forthcoming." Mr. Dorrough did not file his complaint in *Dorrough v. Jones* until April 8, 2003, over three years after issuance of the detainer warrant. Accordingly, Mr. Dorrough's tort causes of action in that case were barred under either Tenn. Code Ann. §28-3-104 or §28-3-105 and, thus, were appropriately dismissed by summary judgment.

The remaining issues we address pertain to the trial court's review of matters pursuant to our remand in *Jones v. Dorrough.* The first of these issues is whether upon remand the trial court erred by excluding evidence of certain "substantial payments" which Mr. Dorrough alleges he made to Ms. Jones for purchase of the property. In this regard, Mr. Dorrough's brief states as follows:

> This court remanded the original action after determining that the trial court was in error in granting the original plaintiff a Summary Judgment without consideration of the amounts paid by Mr. Dorrough. Specifically this court noted the final payments by Mr. Dorrough totaling $192,000.00 (reference to record omitted) but also accepted as true the fact that "Steven Dorrough paid or caused to be paid substantial sums of money to . . . Jones. The parties agreed that those payments were going toward the purchase price of the Keller Bend property." (reference to record omitted) The case was then remanded for determination of allocation of amounts paid by Dorrough to Jones and which party was entitled to all or a portion of those funds. The court stated if the final $192,000.00 paid by

Dorrough to Jones exceeded Jones' entitlement under the lease then Dorrough would be entitled to a refund.

It is obvious that in order to determine what funds if any were due Jones, from the Appellee here, there would first need to be proof as to what "funds" had been paid to her previously. The trial court on remand, excluded all reference and evidence regarding those prior substantial payments (reference to record omitted). The Appellant, therefore contends that the trial court could not correctly determine the amount of any funds due to the Appellee, if any, without hearing evidence as to what payments had been made to her.

At the outset of our review of this issue, we are compelled to address Mr. Dorrough's statement that in our prior opinion we "accepted as true the fact that 'Steven Dorrough paid or caused to be paid substantial sums of money to . . . Jones. The parties agreed that those payments were going toward the purchase price of the Keller Bend property.' " While we did accept this statement, derived from the Dorroughs' statement of facts in the original case, as true, it was accepted as true for the limited purpose of our review of the trial court's grant of summary judgment. As we stated in our opinion, "*[i]n our review of the Trial Court granting a summary judgment*, we will accept as true the Dorroughs 'Statement of Facts'." (Emphasis added.) Given the standard by which we are bound in the summary judgment context, as set forth both in our prior opinion and the instant opinion, i.e. that we "must view the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in the nonmoving party's favor", we could do no less than accept the Dorroughs' allegations as true. However, while we accepted these factual assertions as true for the limited purpose of summary judgment review, our acceptance did not, in any sense, constitute a finding of fact by this Court and may not be relied upon as such.

In the recent case of *Silvey v. Silvey*, No. E2003-00586-COA-R3-CV, 2004 WL 508481 at *3, 2000 Tenn.App. LEXIS 167 at *8 (Tenn. Ct. App. E.S., filed March 16, 2004), we noted the extent of a trial court's authority upon remand as follows:

> The general rule regarding the scope of a trial court's authority upon remand is stated as follows in 5 Am.Jur.2d Appellate Review § 791:
>
> > In general, a trial court must strictly comply with the appellate court's mandate, and on remand normally lacks the power to deviate from the terms of the mandate from the appellate court, absent permission from the appellate court, or extraordinary circumstances. Thus, a trial court on remand generally lacks the power to enter any other judgment, or consider or determine any other issue, that is not included in the direction for entry of judgment made by an appellate court. Furthermore, relief generally cannot be given on remand beyond the scope of the mandate. Nor may the lower court review the mandate, even for apparent error.

Any proceedings on remand which are contrary to the directions contained in the mandate from the appellate court may be considered null and void. (Footnotes omitted.)

The limited authority of a trial court upon remand in Tennessee was recently restated as follows in *State v. Blackhurst*, an unpublished opinion of the Court of Criminal Appeals filed in Knoxville on August 12, 2003:

> "The appellate court directs actions and dictates results through its orders, judgments, and mandates" and may limit the scope of a remand. *State v. Williams*, 52 S.W.3d 109, 123 (Tenn. Crim. App. 2001); *State v. Irick*, 906 S.W.2d 440, 443 (Tenn. 1995); *Cook v. McCullough*, 735 S.W.2d 464, 470 (Tenn. App. 1977). Such orders and mandates are controlling, and the lower court does not have "the authority to expand the directive or purpose of [the higher] court imposed upon remand." *State v. Weston*, 60 S.W.3d 57, 59 (Tenn. 2001); *Cook,* 735 S.W.2d at 470. Otherwise, " '[t]here would be no finality or stability in the law and the court system would be chaotic in its operation and unstable and inconsistent in its decision.' " *Irick*, 906 S.W.2d at 443, (quoting *Barger v. Brock*, 535 S.W.2d 337, 341 (Tenn. 1976).

In our prior opinion, we specifically acknowledged the Dorroughs' contention on appeal "that they are entitled to recoup $192,000 paid as to the purchase price, as well as the value of improvements they made to the property." We further cited portions of Mr. Dorrough's affidavit regarding the payment to Ms. Jones of this $192,000.00. Thereafter, we stated as follows:

> Accordingly, we deem it appropriate that the amount of rents and late charges be vacated and the cause remanded for a determination if in fact *the $192,000* was paid on the purchase price a set-off against any rent judgment which is rendered in Ms. Jones' favor with a judgment in favor of her against Mr. Dorrough should the amount paid on the purchase price not fully satisfy her rent entitlement. Conversely, if *the $192,000* exceeds her entitlement under the lease, Mr. Dorrough would be entitled to a judgment against her for the amount *the $192,000* exceeds the rents and late charges he owes.
> (Emphasis added)

Mr. Dorrough argues that "in order to determine what funds if any were due Jones, from [himself], there would first need to be proof as to what 'funds' had been paid to her previously." However, contrary to the implication of this argument, we did not remand for a determination as to what funds were due Ms. Jones based on additional evidence of any and all funds Mr. Dorrough alleges he previously paid to her. Rather, the precise and limited purpose of our remand was to allow

the trial court to determine whether the *$192,000.00* should be treated as a set off against any judgment for rent rendered in Ms. Jones' favor or, conversely, whether Mr. Dorrough should receive a credit should the *$192,000.00* exceed the rent and late charges owed by him.  Resolution of this issue on remand required and authorized nothing more than that the trial court calculate the total amount of monthly rent and late charges paid or outstanding under the terms of the lease and determine what adjustment should be made with respect to this amount based upon payment of the $192,000.00.  If we had intended that upon remand the trial court should consider evidence of "substantial payments" which Mr Dorrough alleges he made in addition to the $192,000.00, we would have instructed the court to do so.  Mr. Dorrough's assertion that the trial court erred in excluding evidence of such alleged additional "substantial payments" is without merit.

Next, Mr. Dorrough argues that the trial court made erroneous factual findings against the preponderance of the evidence with regard to whether the $100,000.00 payment was for a purpose other than purchase of the property at issue. Mr. Dorrough asserts that "[t]he only evidence that the $100,000.00 payment that the Appellant made to Appellee was for any other purpose than the purchase of the residence was the testimony of Mrs. Jones, Appellee that her former husband gave her this $100,000.00 because he felt like (in good faith) that he owed it to her.  Admittedly he had no written obligation to pay her that $100,000.00."

In a non-jury case such as the remanded case before the trial court, we review the record *de novo* with a presumption of correctness as to the trial court's determination of facts and we must honor those findings unless there is evidence which preponderates to the contrary.  Tenn. R. App. P. 13(d); *Union Carbide v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993).  The trial court's conclusions of law are accorded no presumption of correctness. *Campbell v. Florida Steel Corp.,* 919 S.W.2d 26, 35 (Tenn. 1996);  *Presley v. Bennett*, 860 S.W.2d 857, 859 (Tenn. 1993).

In its memorandum opinion of October 7, 2003, the trial court stated grounds for its findings with respect to the payment of the $100,000.00 as follows:

> It appears from the evidence that the $100,000 payment to Ms. Jones was made on February 9, 1999.  It was made to her by a third party corporation in which Mr. Dorrough had no interest.  He was not an employee, stockholder, officer or director of that corporation.  It appears somewhat suspect that such a payment would be made by that third party for the purpose of helping Mr. Dorrough secure ownership of the residence that is the subject of this case without there being some documentation to corroborate that purpose; yet no such corroborating evidence has been furnished to the Court.

> A little more than a month after this payment, Mr. Dorrough paid off the mortgage on March 18, 1999.  He now says that these two were made to assure that Ms. Jones would convey the residence to him. Ms. Jones did not, however, make any conveyance to Mr. Dorrough, and he took no action to compel

performance of Ms. Jones' alleged promise to convey, or to secure the return of the payments until Ms. Jones filed her detainer warrant on March [sic] 4, 2000.

Ms. Jones says that the $100,000 payment related to a Coventry Industries Corporation stock transaction for which Mr. Dorrough became obligated to her for that sum. It appears that Ms. Jones, in fact, reported the payment as part of a stock sale on her 1999 U.S. Income Tax Return. See exhibits three and four.

Under those circumstances, the Court is required to make a judgment about the credibility of the parties. It observed each of them carefully while they testified, and has considered carefully the reasonableness, or unreasonableness, of their testimony. After having done so, the Court is compelled to give greater weight and credit to Ms. Jones' testimony.

The record before us does not contradict the grounds set forth by the trial court in support of its findings with respect to the payment of the $100,000.00. As to a trial court's assessment of witness credibility, the Tennessee Supreme Court stated as follows in *Wells v. Tennessee Board of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999):

Unlike appellate courts, trial courts are able to observe witnesses as they testify and to assess their demeanor, which best situates trial judges to evaluate witness credibility. Thus, trial courts are in the most favorable position to resolve factual disputes hinging on credibility determinations. Accordingly, appellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary.
(Citations omitted)

We are not presented with clear and convincing evidence in this case which contradicts the trial court's evaluation of witness testimony and we find no merit otherwise in Mr. Dorrough's argument that the evidence preponderates against the trial court's findings upon remand with regard to payment of the $100,000.00 or with regard to any other payments which Mr. Dorrough alleges he made towards the purchase of the property.

Mr. Dorrough also argues that the evidence preponderates against the trial court's finding upon remand that the lease document signed by the parties on April 3, 1990, was the controlling contract rather than the MDA propounded by Mr. Dorrough. In its memorandum opinion of October 7, 2003, the trial court stated the basis for its finding that the April 3, 1990, lease was controlling:

[I]t is necessary that the Court resolve as a matter of fact the question about what, if any, lease agreement existed between these parties. It appears here that the lease agreement, marked exhibit one, relied upon by Ms. Jones was a form document, which had been completed by someone, and which bears the signature of Mr. Dorrough and Ms. Jones, or then Mrs. Dorrough, and appears to have been

individually acknowledged by each of them. On the acknowledgment for Mr. Dorrough it's noted that Mr. Dorrough's name is placed on the wrong line in the acknowledgment, but nevertheless, the acknowledgment appears to show that on April 3, 1990 he appeared before a notary public named Jane Tinsley and executed what the acknowledgment calls "the within instrument for the purposes therein contained." That acknowledgment bears the seal of Ms. Tinsley as notary. It's interesting to note that a copy of that signature page and acknowledgment is attached to exhibit seventeen, the alleged lease that Mr. Dorrough relies upon in this case. He apparently suggests that somewhere, sometime, somehow, the signature page that is referred to and appears on exhibit one was attached to exhibit seventeen, and that exhibit seventeen became the parties' lease. Mr. Dorrough, in previous filings in this court, has admitted that he signed what appears here as exhibit one, but says he did it solely for the accommodation or convenience of Ms. Jones. And this Court has not been furnished with any copy of exhibit seventeen that bears Ms. Jones' signature, or for that matter Mr. Dorrough's signature on page six, the place upon that instrument for the signature of the parties to it.

It's also of some interest to the Court that exhibit seventeen provides that "this lease agreement with option to purchase made and entered into on the blank day of May 1990, so forth", indicating that perhaps - - we can't determine conclusively - - but perhaps the draftsman prepared this document either in the month of May or at least sometime prior to that, in contemplation that it would be executed in the month of May. But nevertheless, the only signature page that is attached to it bearing the signature of Mr. Dorrough and Ms. Jones is a copy of the form signature page that appears on exhibit one. That signature page indicates that Mr. Dorrough acknowledged the instrument on April 3, 1990, a date well in advance of the date contemplated for execution by the terms of exhibit seventeen.

It further appears that if the parties ever contemplated executing exhibit seventeen that they did so because it was to take the place of a previous lease agreement that had been executed by the parties. This follows from the fact that on page six, paragraph nineteen, exhibit seventeen contains the following language, "This lease agreement with option to purchase cancels and supersedes that certain lease agreement executed by the parties hereto dated April 1, 1990." This suggests that Mr. Dorrough apparently sought to change his obligations under exhibit one, by getting Ms. Jones to execute exhibit seventeen. The Court is not satisfied, however, that Mr. Dorrough has proven by a preponderance that Jones ever executed exhibit seventeen. The attachment of a copy of the signature page from exhibit one to exhibit seventeen, in an attempt to show that Ms. Jones signed exhibit seventeen is, in the eyes of the Court, a suspicious circumstance.

In support of his argument that the lease marked exhibit one was executed for the accommodation of Ms. Jones, and that it was not really to be the agreement between the parties, Mr. Dorrough points out that exhibit one calls for a rental payment of $3,500 a month, or $42,000 annually, while he says the mortgage payment was never that high.

In this regard, the Court notes that the marital dissolution agreement provided that there would be a lease agreement between the parties, and that according to that lease agreement the lessee, Mr. Dorrough, would pay rent at the monthly rate, R-A-T-E, provided for in the mortgage agreement. We do not have the mortgage before us in this case, but it's interesting to note that in exhibit two here there is a summary of Mr. Dorrough's payments under the mortgage agreement, according to Ms. Jones. And according to that summary, the monthly mortgage payment by Mr. Dorrough varied from time to time for some reason, unexplained to the Court, but there were times when the payments apparently exceeded forty-one thousand dollars a year. I don't know how the parties came up with a forty-two thousand dollar annual rent payment in exhibit one, that figure, but I think it appears that they were trying to enter a lease agreement that would be sufficient to make sure the mortgage payments were made, and apparently this is the only way they could figure out how to do that. I don't know. But in any event, looking at all this carefully, the Court is constrained to conclude that exhibit one is the lease agreement between these parties and Mr. Dorrough is bound by that lease.

It is our determination that Mr. Dorrough has failed to show that the evidence preponderates against the trial court's well reasoned findings.

Mr. Dorrough also argues that the trial court erred in awarding Ms. Jones attorney's fees. Mr. Dorroughs cites no authority for this argument. We have reviewed the record and find that the lease agreement provides for an award of attorney's fees to the landlord, which in this case is Ms. Jones, if she is successful in a suit to obtain possession of the property. Therefore, we hold that the award of attorney's fees is proper and the trial court made an appropriate award of fees.

For the foregoing reasons we affirm the judgments of the trial court and remand for any necessary further action consistent with this opinion. Costs of appeal are adjudged against Steven Travis Dorrough and Jayme Dorrough and their surety.

_____
SHARON G. LEE, JUDGE

-17-